# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JAMES EARL ALLEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 13-cv-89 |
| v. ) | |
| ) | Judge Charles P. Kocoras |
| MARCUS HARDY, DR. PHYLLIS ) | |
| TOLLEY, RALPH BURKYBILE, ) | |
| ED BUTKLEWWICZ, ADA ) | |
| JOHNSON, FRANCES SHIEVERS, ) | |
| and CHARLES WOODS ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Defendant Dr. Phyllis Tolley's ("Dr. Tolley") motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 and Northern District of Illinois Local Rule 56.1 against Plaintiff James Earl Allen ("Allen"). For the following reasons, the Court grants the motion.

## BACKGROUND

The following facts taken from the record are undisputed, except where otherwise noted. On or around February 27, 2011, Allen was involved in an altercation with his then cellmate, Eugene Logan ("Logan"), at Stateville Correctional Center ("Stateville"). According to Allen, this incident caused him to have continued fears and anxiety over another attack. In response to his fears, Allen sought mental

health treatment at Stateville beginning in September of 2011. After an initial evaluation, Allen was diagnosed with Post Traumatic Stress Disorder (PTSD) and depression. During the relevant time period, there were two psychologists on staff at Stateville, Dr. Tolley and former Defendant, Dr. Charles Woods ("Dr. Woods"). Dr. Tolley and Dr. Woods divided inmate cases based on the inmate's last name. Woods examined inmates whose first letter of their last name fell in the first half of the alphabet, while Dr. Tolley examined inmates whose first letter of their last name fell in the second half of the alphabet. Therefore, Dr. Woods and psychiatrist, Jonathan Kelly, ("Dr. Kelly") managed Allen's treatment.

Allen contends that during the fall of 2011 he wrote several letters directed to the Mental Health Unit and Dr. Tolley[1] requesting a designation of "vulnerable status." Vulnerable status is a mental health designation of an inmate who is deemed vulnerable to attack or being taken advantage of by predatory inmates. A mental health professional uses several different factors when assessing an inmate for vulnerable status, including: physical stature, the types of crime an inmate was incarcerated for, disciplinary history, sexual orientation, mental health history, and current medical condition. Inmates designated as "vulnerable" are either assigned in a single-cell,[2] or are housed with inmates who are also designated with "vulnerable

---

[1] Dr. Tolley was the sole mental health professional allowed to evaluate inmates for vulnerable status.
[2] Illinois Department of Corrections, not mental health professionals, determine whether an inmate receives a single-cell assignment.

status." According to Allen, Dr. Tolley ignored his repeated requests to be evaluated for vulnerable status.

On or about November 21, 2011, Stateville inmate, Brodie Young ("Young"), moved into Allen's cell. Allen did not know Young before they became cellmates. During their time as cellmates Young never directed any threats at Allen. However, on November 25, 2011, Allen contends he filed a request to be transferred from the cell he shared with Young due to Young's odd behavior and gang affiliation. On December 1, 2011, Allen claims he wrote to correction officials asking to speak with them about Young. On December 3, 2011, Young allegedly assaulted Allen while he was asleep. Allen claims he suffered injuries to his eye and face due to the attack resulting in hospitalization and fourteen stitches on his face.

In response to the alleged assault, Allen brought this lawsuit against Dr. Tolley, Marcus Hardy ("Hardy"), Ralph Burkybile ("Burkybile"), Ed Butklewicz ("Butklewicz"), Ada Johnson ("Johnson"), Frances Shievers ("Shievers"), and Dr. Woods alleging failure to protect (Counts I and II), and deliberate indifference to a serious medical need (Count III). On August 8, 2016, all parties except for Dr. Tolley reached a settlement with Allen. Dr. Tolley now moves for, and this Court grants, summary judgment on Counts II and III.

## **LEGAL STANDARD**

A motion for summary judgment requires the Court to construe all facts and to draw all reasonable inferences in favor of the non-movant. *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact arises where a reasonable jury could find, based on the evidence of record, in favor of the non-movant. *Anderson*, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court considers the whole record. *See Id.* at 255–56.

Northern District of Illinois Local Rule 56.1 requires the "party moving for summary judgment to include with the motion 'a statement of material facts as to which the moving party contends there is no genuine issue and that entitles the moving party to a judgement as a matter of law.'" *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004) (quoting N.D. Ill. R. 56.1(a)(3)). "The movant bears the initial burden of showing that no genuine issue of material fact exists." *Genova v. Kellogg*, 2015 WL 3930351, at *3 (N.D. Ill. June 25, 2015). "The burden then shifts to the non-moving party to show through specific evidence that a triable issue of fact remains on issues on which the movant bears the burden of proof at trial." *Id*. The non-moving party must respond to the movant's Local Rule 56.1(a)(3) statement and may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits. N.D. Ill. R. 56.1(b); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The non-movant must support her contentions with documentary evidence of specific facts that demonstrate that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.

## DISCUSSION

**I.     Failure to Exhaust**

To give corrections officials an opportunity to address complaints internally before a federal suit is initiated, prisoners must exhaust their administrative remedies. 42 U.S.C. § 1997(e)(a) (the "PLRA"); *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). Accordingly, a plaintiff must pursue all administrative remedies no matter what relief is sought, including monetary damages. *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). The exhaustion requirement applies to deliberate indifference claims. *Porter* at 532. To exhaust administrative remedies, a prisoner "must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Id.* at 1025.

Illinois has created a three-step administrative process for inmates to follow. Step one requires the prisoner to "first attempt to resolve incidents, problems, or complaints ... through his ... counselor." *See* Ill. Admin. Code, Title 20, § 504.810(a). If the inmate is unable to resolve his problem through his counselor, the inmate must proceed to step two, which requires him to "file a written grievance on a grievance form ... within 60 days after the discovery of the incident" which must be addressed to the "Grievance Officer" and "shall contain factual details ... including what happened, when, where, and the name of each person who was the subject of or who is otherwise involved in the complaint." *See* Ill. Admin. Code, Title 20, § 504.810(a),(b). The grievance officer and the chief administrative officer then consider properly submitted

grievances. *Id.*; § 504.830(d). If the inmate is unsatisfied with the chief administrative officer's resolution, the inmate "may appeal in writing to the director within 30 days after the date of the decision." *Id.*, § 504.850(a). If the director determines that further review is required, the Administrative Review Board evaluates the appeal. *Id.* § 504.850(b). Only after the director makes a final determination with respect to the merits of the grievance is the inmate's administrative remedy fully exhausted. *See* 20 Ill. Admin. Code § 504.850(f).

Here, Dr. Tully argues, among other things, that Allen has "failed to exhaust administrative remedies as to Dr. Tolley" and thus this Court should "enter summary judgment in Dr. Tolley's favor on this basis alone." Allen argues that "when viewed in the light most favorable to" him, the facts show he has exhausted all administrative remedies. The evidence shows that following the December 3, 2011, incident with Young, Allen filed three grievances relating to the incident. The first grievance, dated December 6, 2011, described Allen's written requests to Dr. Tolley for mental health evaluations and classification under "vulnerable status" for single-cell placement and Dr. Tolley's failure to grant a mental health evaluation. On January 19, 2012, Allen filed another grievance referencing the December 3rd attack, a failure to receive a response from Butklewicz to his prior grievance, and Dr. Tolley's failure to evaluate leading to the December 3rd attack. On January 27, 2012, Allen filed his final grievance relating to the incident with Young. In this grievance Allen noted the

December 3rd attack, damage to his flat screen TV, his prior grievance filed about the assault, and his subsequent transfer to Pontiac.

On February 14, 2012, a grievance officer reviewed Allen's grievances. The grievance officer stated that he could not determine whether "Stateville staff was delinquent in their efforts to quell inmate Young's violence by placing him in a single cell". With regard to Allen's grievance regarding damage to his TV set, the grievance officer recommended that the grievance be considered moot. Finally, the grievance officer recommended that Allen send the grievance officer's response to the Administrative Review Board. On April 6, 2012, the chief administrative officer concurred with the grievance officer's determination. Allen subsequently appealed these grievances to the Administrative Review Board.

On October 16, 2012, the Director of the Illinois Department of Corrections, along with the Administrative Review Board, reviewed "Allen's combined grievances" and issued their ruling. While the Administrative Review Board did not award Allen any relief for his grievances, they did not reject any grievances on procedural grounds. In matters where prison officials address an inmate's grievance on the merits without rejecting it on procedural grounds, the grievance has served its function of alerting the state and inviting corrective action, and prevents defendants from relying on the defense of failure to exhaust. *Riccaro v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004). Therefore, viewed in the light most favorable to Allen, this Court determines he has exhausted his administrative remedies.

## II.     42 U.S.C. § 1983 – Failure to Protect

The Eighth Amendment imposes a duty on prison officials to take reasonable steps to protect prisoners from attacks by other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). However, not every inmate-on-inmate attack is a constitutional violation. *Luttrell v. Nickel*, 129 F.3d 933, 935 (7th Cir. 1997). To succeed on a "failure to protect" claim Allen must prove that (i) "he is incarcerated under conditions posing a substantial risk of serious harm," and (ii) Dr. Tolley acted with "deliberate indifference" to that risk.

"Deliberate indifference" means recklessness in a criminal, subjective sense; that is, disregarding a risk of danger so substantial that knowledge of the danger can be inferred. *James v. Milwaukee County*, 956 F.2d 696, 700 (7th Cir.), cert. denied, 506 U.S. 818 (1992). "Such disregard is tantamount to intending that the injury occur." *Id*. Any act with a state of mind less than intent or criminal recklessness, such as negligence or gross negligence, does not amount to punishment. *Salazar v. City of Chicago*, 940 F.2d 233, 238-39 (7th Cir.1991); see also *Tesch v. County of Green Lake*, 157 F.3d 465, 474 (7th Cir.1998).

Dr. Tolley argues that Allen "failed to show [she] had actual knowledge of a specific threat, or of a substantial risk of harm." Allen contends that Dr. Tolley was aware of the substantial risk of harm Allen faced based on "multiple grievance requests" he filed. According to Allen, "[i]n these requests, [he] highlighted the imminent fears he faced of assault, and attempted to . . . pursue options to protect his

8

life." After reviewing the parties' briefs and evidence, this Court determines that Allen has failed to demonstrate that Dr. Tolley had actual knowledge of a specific threat, or of a substantial risk of harm to Allen.

While Allen claims he made several requests for single-cell placement out of fear for his safety, it is undisputed that Dr. Tolley never reviewed any of Allen's grievances. Allen also attempts to establish that Dr. Tolley had knowledge of a substantial risk of harm to him based upon requests he made to IDOC correctional personnel Shievers, Johnson, and Butkiewicz for placement in a single-cell. However, Allen offers no factual support to explain how his interactions with IDOC correctional personnel placed Dr. Tolley on notice of his alleged requests for single-cell placement, or that Young posed a threat to Allen. Furthermore, Allen alleges he wrote several letters directed to the Mental Health Unit and Dr. Tolley prior to the December 3, 2011 attack. However, it is undisputed that these letters never referenced Young, never mentioned a threat of violence, and never referenced concerns regarding Allen's safety or security. It is also undisputed that Dr. Tolley never reviewed any letters, written requests, or any other correspondence from Allen. Therefore, Allen has failed to prove Dr. Tolley was aware of a substantial risk of harm to him through his grievances.

Allen next attempts to establish knowledge on the part of Dr. Tolley based upon the contention that she was Young's treating mental health professional. As Dr. Tolley notes, this argument is flawed for two reasons. First, Dr. Tolley denies she

ever treated Young as a patient, and Allen offers no evidence to prove otherwise. Second, Allen fails to present evidence that even if Dr. Tolley did offer mental health treatment to Young, how that fact alone would "apprise her of the threat he posed to Allen." Dr. Tolley correctly contends that Allen "fail[ed] to come forth with any evidence indicating Young advised Dr. Tolley he posed a risk to [Allen's] safety, or that Young even mentioned Allen to Dr. Tolley at all." Allen argues that Dr. Tolley was made aware of the potential threat Young posed to Allen based upon previous threats Young allegedly made towards another inmate, Dennis Glick ("Glick"). However, Allen has not established that these threats were documented in Young's IDOC prison records, or that Dr. Tolley reviewed these records. Moreover, this Court agrees with Dr. Tolley's contention that even if she was aware of purported threats made by Young to Glick, Allen has failed to establish how threats directed at another inmate indicated that Young posed a specific risk to Allen. While Young's alleged threats may demonstrate a propensity for violence, as this Court noted in *Birch v. Jones*, most inmates at Stateville, a maximum security prison, have a propensity to commit violent acts, and prison officials cannot be held liable for unanticipated attacks. 2003 WL 21210107, at *3 (N.D. Ill. May 21, 2003).

Allen's final attempt to establish knowledge on the part of Dr. Tolley is based upon alleged interactions Dr. Tolley had with her colleagues, Dr. Kelly and Dr. Woods. As the evidence shows, Allen began receiving mental health treatment in September of 2011. On September 20, 2011, Allen underwent a mental health

evaluation by Dr. Kelly. After diagnosing Allen with "Depressive Disorder," Dr. Kelly referred Allen to Dr. Woods for psychotherapy. It is undisputed that Dr. Tolley never provided Allen with any treatment. While Allen concedes he never received treatment from Dr. Tolley, he argues that Dr. Tolley's day-to-day interactions with Dr. Kelly and Dr. Allen would have provided her with sufficient knowledge that Allen faced a serious risk of harm from his cellmate. Allen's contention is unsupported by the evidence presented.

It is undisputed that neither Dr. Kelly nor Dr. Woods were aware of a specific threat from Young. Furthermore, neither Dr. Woods nor Dr. Kelly documented that Allen reported a specific threat posed by any inmates, including Young, in their clinical notes. Moreover, Dr. Woods specifically testified that Allen never reported any threats from other inmates prior to December 3, 2011. Lastly, and most detrimental to Allen's claim, is his own admission at his deposition that he never made any written or oral complaints regarding Young to Dr. Kelly and Dr. Woods. Since Allen failed to establish that Dr. Tolley had subjective knowledge of any threat to his safety, her motion for summary judgment on Count II is granted.

**III.     42 U.S.C. § 1983 – Deliberate Indifference to Serious Medical Need**

To claim a constitutional violation under § 1983 for denial of medical care Allen must meet both an objective and a subjective component. First, he must show that his medical condition was objectively serious. Second, he must show that Dr. Tolley was subjectively aware of, and consciously disregarded, Allen's medical needs

11

or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). This latter element requires that Dr. Tolley knew of and disregarded "an excessive risk to [Allen's] health or safety." *Id*. Dr. Tolley "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw that inference." *Id*. The test of deliberate indifference is a significantly high burden for a plaintiff to overcome and the burden is on the prisoner to demonstrate deliberate indifference. *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011).

Dr. Tolley does not dispute that Allen suffered from a serious medical condition. Instead, Dr. Tolley argues that Allen has failed to present evidence that she disregarded an excessive risk to his health or safety. Specifically, Dr. Tolley argues that she never received or denied a request to examine Allen for vulnerable status. In response, Allen argues Dr. Tolley's refusal to evaluate him for vulnerable status constituted a refusal to exercise medical judgment, which constitutes deliberate indifference. However, Allen's assertion is contrary to the evidence before the Court, including his own admission.

Summary judgment is "the put up or shut up moment in a lawsuit, when a party must show the evidence it has that would convince a trier of fact to accept [his] version of events." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008). Allen has failed to offer any facts that would support his claim of medical indifference against Dr. Tolley. Besides failing to provide evidence to support his own account, Allen has presented this Court with evidence that confirms Dr. Tolley's narrative. In

response to Dr. Tolley's statement of facts, Allen admits that "Dr. Tolley never refused a request to evaluate an inmate for vulnerable status while at Statesville," including himself. Therefore, Allen's contention that Dr. Tolley "intentionally [and] recklessly disregarded his needs" by failing to evaluate him for vulnerable status is wholly without merit. Because Allen cannot show that Dr. Tolley consciously disregarded his medical needs, her motion for summary judgment on Count III is granted.

## **CONCLUSION**

For the aforementioned reasons, the Court grants the motion and enters judgment in Dr. Tolley's favor and against Allen. It is so ordered.

_____

Dated: 8/4/2017                 Charles P. Kocoras
                                          United States District Judge